[Cite as *In re T.A.*, 2020-Ohio-815.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [In the Matter of: | : | |
| T.A. et al., | : | No. 18AP-943 |
| | | (C.P.C. No. 14JU-11164) |
| T.M., | : | |
| | | (ACCELERATED CALENDAR) |
| Appellant]. | : | |

---

D E C I S I O N

Rendered on March 5, 2020

---

**On brief**: *Robert J. McClaren*, for Franklin County Children Services.

**On brief**: *Yeura Venters*, Public Defender, and *Timothy E. Pierce*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch

BROWN, J.

{¶ 1} T.M. ("mother"), appellant, appeals a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, in which the court granted the motion of Franklin County Children Services ("FCCS"), appellee, for permanent custody with regard to her children, T.H.-M., T'M.A., and T.A.

{¶ 2} The three children at issue in the present case are T.H.-M., born January 2, 2010; T'M.A., born December 10, 2007; and T.A., born December 22, 2006. T.M. is the mother of the children, and A.A. is the father of the children. Father and mother are not married. The children were living with father in a shelter at the time they were removed from his care via a June 11, 2014 emergency court order. At the time, mother had unstable housing and employment. She had left the children with father due to these issues.

{¶ 3}  On August 29, 2014, a neglect and dependency complaint was filed against mother and father.  The court ordered FCCS maintain temporary custody of the children.

{¶ 4}  On October 14, 2014, the neglect charge was dismissed, and the case proceeded to trial on the dependency charge before a magistrate. Mother appeared with counsel and did not contest the dependency charge. The magistrate adjudicated the children dependent, ordered temporary custody to FCCS, and adopted a case plan. Temporary custody was extended several times by the trial court. Since October 14, 2014, the children have been in foster care. The children are currently in a foster home.

{¶ 5}  On May 13, 2016, FCCS file a motion for permanent court commitment ("PCC"). On April 13, 2017, FCCS filed an amended motion for PCC.

{¶ 6}  On three dates from April through July 2018, a trial on the motions was held. Mother appeared for the first two hearing dates but not for the final date. On November 9, 2018, the trial court issued a decision in which it granted the motion for PCC for FCCS. Mother appeals the judgment of the trial court, asserting the following assignment of error:

> The lower court's judgment awarding permanent court custody of the children to Franklin County Children Services was against the manifest weight of the evidence.

{¶ 7}  Mother argues in her assignment of error the trial court's decision granting PCC to FCCS was against the manifest weight of the evidence. R.C. 2151.414 governs the procedure for granting permanent custody of a child to an agency such as FCCS. Under R.C. 2151.414(B)(1), a trial court may grant permanent custody to an agency if the court determines, by clear and convincing evidence, that: (1) it is in the best interest of the child, and (2) one of the situations set forth in R.C. 2151.414(B)(1)(a) through (d) applies. Clear and convincing evidence is that measure or degree of proof which is more than a mere preponderance of the evidence, but not to the extent of such certainty as is required beyond a reasonable doubt in criminal cases, and that will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, ¶ 42, citing *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 8}  In determining whether the trial court's ruling on the permanent custody motion is against the manifest weight of the evidence, we must consider whether the

evidence on each element of the agency's case satisfied or failed to satisfy the burden of persuasion, i.e., whether clear and convincing evidence supports each element. *See Sparre v. Ohio Dept. of Transp.*, 10th Dist. No. 12AP-381, 2013-Ohio-4153, ¶ 11, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 19. A judgment supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *Id.* at ¶ 10, citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus. " 'The phrase "some competent, credible evidence" * * * presupposes evidentiary weighing by an appellate court to determine whether the evidence *is* competent and credible.' " (Emphasis sic.) *Id.*, quoting *Eastley* at ¶ 15.

{¶ 9} "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. * * * Weight is not a question of mathematics, but depends on [the evidence's] effect in inducing belief.' " (Emphasis omitted.) *Eastley* at ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990). "Thus, in reviewing a judgment under the manifest-weight standard, a court of appeals weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way." *Sparre* at ¶ 10, citing *Eastley* at ¶ 20.

{¶ 10} "In undertaking this limited reweighing of the evidence, however, we are guided by the presumption that the factual findings of the trial court were correct." *Id.* at ¶ 12. "Accordingly, the weight to be given the evidence and the credibility of the witnesses are primarily questions to be answered by the trier of fact." *Id.*, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The rationale for this deference is the trier of fact is in the best position to view witnesses and observe their demeanor, voice inflections, and gestures. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 11} In the present case, mother does not dispute that the trial court correctly found clear and convincing evidence establishes the situation described in R.C. 2151.414(B)(1)(d) and supports the permanent custody award. In other words, the evidence shows the children were in the temporary custody of one or more public or

private children services agencies for 12 or more months of a consecutive 22-month period. R.C. 2151.414(B)(1)(d).

{¶ 12} Once the trial court finds that one of the circumstances in R.C. 2151.414(B)(1)(a) through (d) applies, the trial court then must determine whether a grant of permanent custody is in the best interest of the child. R.C. 2151.414(B)(1). Here, mother contests only the trial court's findings regarding the best-interest factors. R.C. 2151.414(D) provides that, in determining the best interest of the child, the court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers, out-of-home providers, and any other person who may significantly affect the child, (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem ("GAL"), with due regard for the maturity of the child, (3) the custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999, (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency, and (5) whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child. The factors set forth in R.C. 2151.414(E)(7) through (11) include: (1) whether the parents have been convicted of or pled guilty to various crimes, (2) whether medical treatment or food has been withheld from the child, (3) whether the parent has placed the child at a substantial risk of harm due to alcohol or drug abuse, (4) whether the parent has abandoned the child, and (5) whether the parent has had parental rights terminated with respect to a sibling of the child.

{¶ 13} In her brief, mother contests the trial court's findings under the best-interest factors. Mother first argues that under its discussion of the best-interest factor in R.C. 2151.414(D)(1)(a)—the children's relationship with their parents and foster care providers—the court did not address the children's relationship with others but, instead, addressed how the case began, other candidates for custody, and FCCS's rejection of a relative as a candidate for custody. Mother points out the court ignored her close relationship with the children, the children's expression of their close relationship with

mother to the GAL, Ebonie Martin; FCCS caseworker Yolanda Chambers's observation of their close relationship; and the urging of the children's attorney, Rossia Meranda, to deny PCC due to the deep bond between them. Mother points out Chambers's testimony that mother closely adhered to the visitation schedule in the year leading up to the hearing, and her contacts with the children were always appropriate. Mother also points out that, during her testimony, she testified she was familiar with the special needs of the children, their medications, their education plans, and their behavioral needs.

{¶ 14} We agree that the trial court's findings on this factor were insufficient. The court did not address the children's relationship with their parents or foster parents. However, the record contained evidence on this issue. Both the GAL and caseworker Chambers indicated there was a bond between the children and mother. The GAL stated that, although she had never witnessed the children and mother interact, the children expressed they loved mother. The caseworker testified the children had a bond with mother and were always happy to see her. The children's attorney stated the children are bonded with mother and have positive interactions with mother. Mother also had consistently visited the children, except from October 2016 to February 2017 (120 days) and March 2017 to July 2017 (119 days), and she exhibited concern for the children's special needs. Furthermore, the children had a bond with their foster parents, particularly the foster mother.

{¶ 15} The above evidence makes this factor difficult to weigh. It appears clear mother and children have a bond. However, the two periods of non-visitation are significant and troubling. They raise the question of how can a mother be bonded to children whom she has abandoned for four months at a time? These two periods of abandonment shift the weight of this factor in favor of granting PCC.

{¶ 16} Mother next argues that the trial court's analysis of the best-interest factor under R.C. 2151.414(D)(1)(b)—the wishes of the child as expressed through the GAL—was against the manifest weight of the evidence. Mother contends that the trial court only made one finding regarding the wishes of the children—they would like to return home to their parents—and the rest of the discussion was irrelevant and concerned how the foster parents had not obtained a parental role with the children, and the GAL did not conduct a thorough investigation because she never observed the children with the parents. Mother

also points out that the court made an incorrect finding in that the children did not express they wanted to return to both parents but indicated to the GAL they wanted to return to mother.

{¶ 17} We agree with mother on several points. First, much of the trial court's discussion was not directly relevant to the wishes of the children; thus, any findings not relevant to the children's wishes should be disregarded as to this factor. Second, the GAL testified not that the children wished to be placed with "the parents" but with mother only. However, the trial court's error did not prejudice mother, as it would necessarily include the finding that the children desire to be with her too. This factor, considered in isolation, would weigh in favor of denying PCC.

{¶ 18} Mother next argues the trial court's finding as to the best-interest factor under R.C. 2151.414(D)(1)(c)—the custodial history of the child—was against the manifest weight of the evidence. Mother contends that, even though the children were in the temporary custody of FCCS for a period in excess of 12 months out of 22-consecutive months, this time period in and of itself cannot be held against mother without considering the reasons for it and the implications that it had on the children. Mother argues that the trial court failed to make any meaningful consideration beyond the 12-out-of-22 finding. Mother points out that, despite the period of separation, the children did not waiver in their desire to live with their mother, mother worked successfully on the case plan with hopes of reunification, and FCCS did not make reasonable efforts to reunify.

{¶ 19} While it is true the trial court made only the 12-out-of-22 finding, as FCCS points out, mother suffered no prejudice because the full custodial history supports PCC. As detailed above, emergency custody was granted on June 11, 2014, and the children have been in foster care since October 14, 2014. Furthermore, insofar as mother argues the trial court should have also taken other facts into consideration when considering custodial history, R.C. 2151.414(D)(1)(c) does not require such consideration, and mother fails to cite any authority finding that such additional facts are necessary considerations when setting forth the custodial history under this best-interest factor. Insofar as the trial court made the 12-out-of-22 finding, and the more detailed custodial history weighs in

favor of PCC, we find the trial court committed no prejudicial error in its consideration of this factor.

{¶ 20} Notwithstanding, although the trial court addressed the other issues mother now raises in other parts of its decision, we will address these additional issues at this juncture. Mother first contends the children desired to live with her during this entire period and she worked successfully on the case plan. However, the trial court was clearly aware of the children's wishes and mother's significant efforts to comply with the case plan, as they are analyzed elsewhere in the decision. Furthermore, we note the record is not clear that the children desired to live with mother the entire four-year period they were in FCCS custody, although they clearly expressed their desire to do so near the time of trial to their attorney and GAL.

{¶ 21} Mother also asserts FCCS did not make reasonable efforts to reunify under R.C. 2151.419(A)(1) with respect to the housing issue. Mother acknowledges this was not a statutorily required finding, but the court felt compelled to make it. Mother points out FCCS provided her financial assistance to obtain housing only once during the four years the case was pending. Mother claims this was particularly important because the caseworker and GAL both relied on mother's lack of housing in recommending PCC be granted.

{¶ 22} Although the trial court found in its decision that FCCS did make reasonable efforts to reunify, the trial court also concluded that FCCS did not adequately assist mother in obtaining stable housing. We disagree with the later conclusion to some degree. The trial court's conclusion that FCCS did "nothing" to help obtain stable housing is controverted by the record. Chambers, the FCCS caseworker, testified that FCCS had provided assistance to mother to help locate and obtain appropriate housing. Chambers stated she was linked with a community service worker in 2015, who did a walk-through of mother's housing and completed the paperwork so FCCS could assist with mother's first month's rent and deposit, which it eventually did by paying $1,300 for mother. Chambers testified it was customary for caseworkers to link community service workers to assist with locating housing, because FCCS does not have its own housing, and FCCS linked mother twice with community service workers. She stated mother had not been referred to a community service worker for housing since 2015 because mother had not

requested such. She testified she discussed housing with mother every time they spoke to each other, and on numerous occasions, mother had a place in mind, had contacted different landlords, and had been very resourceful in looking on her own. Chambers stated that mother has a 2016 eviction on her record, which makes it difficult to find housing. Therefore, it is clear FCCS monitored mother's housing issues and, in fact, provided some assistance to mother to find stable housing, although it was only for a limited period and does not appear to have been consistent throughout the pendency of the case.

{¶ 23} As FCCS points out, this court has before held that, where there has been a finding that the parents abandoned the children, "FCCS [i]s under no duty to make reasonable efforts to reunify the family and was not required to prove reasonable efforts to reunify the family at the hearing on its motion for permanent custody." *In re A.E.*, 10th Dist. No. 07AP-685, 2008-Ohio-1375, ¶ 17. Here, the trial court found mother abandoned the children for two different periods. Nevertheless, Chambers did testify that she did everything in her power as a caseworker to reunify mother and her children. For these reasons, we find no error in these respects.

{¶ 24} Mother next argues the trial court's decision regarding the best-interest factor in R.C. 2151.414(D)(1)(d)—the children's need for a legally permanent placement and whether that type of placement can be achieved without a grant of PCC—was against the manifest weight of the evidence. Mother contends the children were in need of legally permanent placement, but such could have been achieved without PCC being granted to the agency. She points out the children were strongly attached to her, wished to be reunified with her, and opposed PCC to the agency. The children's attorney who advocated the wishes of the children argued against PCC being granted to FCCS. Mother had completed a significant portion of the case plan, had a plan for the children, and indicated she could address their behavioral needs. Mother also points out she made arrangements for the children to continue counseling, demonstrated in-depth knowledge of her children's behavioral challenges, and had been regularly visiting her children except for certain periods in late-2016 and mid-2017. Mother again raises the issue that FCCS failed to provide her any financial assistance relative to housing. With first month's deposit assistance, she claims, she would have been able to afford monthly rental

payments. Mother further asserts that, despite the trial court's conclusion to the contrary, she largely complied with the mental health recommendations in the case plan.

{¶ 25} All of mother's points above are generally accurate, except for the issue of housing, which is really the crux of the PCC determination in the present case. During the four-year pendency of this case, mother has been unable to sustain dependable housing. Although mother has had relatively stable employment, steadily worked toward her case-plan objectives, maintained a bond with the children, and made efforts to stay updated on the children's special needs, these positive actions are unfortunately in vain given her inability to provide a safe and stable home for the children. At trial, she admitted she still was without permanent housing, and her current residence was not appropriate for the children. FCCS did help her with funds for housing on one occasion, but mother was unable to maintain a stable residence. Her claim that she desired to find stable housing is undermined by the fact that she had been unable to do so for four years.

{¶ 26} Furthermore, mother's otherwise consistent visitation with the children is blemished by the two periods of abandonment. Although she claims the two periods of abandonment, one for 119 days and one for 120 days, were exacerbated by actions taken by FCCS, and FCCS did, in fact, remove her from the visitation schedule at these times, she was removed from the schedule due to her own actions, i.e., failure to no-call and no-show for at least three consecutive visitations, according to Chambers's testimony. Chambers also testified there were difficulties getting mother back on the schedule, and she did not count those missed visits due to scheduling difficulties in calculating the 119 and 120 missed days.

{¶ 27} As for the mental health components of the case plan, mother argues the court's conclusion that she did not comply with the mental health recommendations was not supported by the evidence. She asserts she completed the Southeast Mental Health evaluation, no further mental health recommendations were made, the GAL stated she had addressed her mental health issues, and the court expressed skepticism whether mother had mental health issues.

{¶ 28} We agree the trial court expressed uncertainty about mother's need for mental health treatment. The trial court found that after mother completed two assessments, it was recommended she receive additional services, but no follow-up

treatment was completed. Mother testified she was not referred to counseling and that her results came back "normal," except that she is bipolar, although that condition does not affect her employment or ability to parent. Chambers testified that mother was to receive additional services at the mental health facility, but mother had difficulty communicating with the case manager, and she received no services. However, the trial court expressed skepticism whether mother needed several mental health assessments, given there was no evidence that mother had a history of mental health issues, she was employed full-time, and she participated in the hearings. The trial court was unsure whether FCCS's request for mental health assessments was merely a standard case plan request. Notwithstanding, the trial court then noted mother missed the last day of trial, and she had an obligation to come back to the trial even if it was emotionally stressful.

{¶ 29} To be sure, throughout the decision, the trial court expressed uncertainty on several issues, including mother's need for mental health treatment and FCCS's effort to help mother obtain suitable housing. However, it was the last few paragraphs of the trial court's analysis that brought the case into focus. The court concluded its analysis by explaining the case opened when mother gave the children to father and left them without any further contact. The court then noted that because mother failed to appear for the last day of trial, which occurred July 31, 2018, over three months after the last hearing, the court was unclear as to her employment status, housing status, and ability to care for the children. Her counsel also had no contact with her on the last day of trial. The court concluded that, despite the efforts of FCCS to supply mother with parenting training, general counseling, and mental health assessments, and mother's efforts to complete the case plan, mother did not have the ability to provide for the children's care. Thus, mother's history of temporary abandonment and failure to appear for the last day of trial weighed heavily in favor of granting PCC. Without her appearance, the trial court had only stale information regarding mother's current circumstances, which severely limited the trial court's ability to attach significant weight to mother's past positive efforts. Therefore, considering the above, we find the children were in need of a legally permanent placement and that type of placement could not be achieved without granting PCC.

{¶ 30} Mother next argues the trial court's decision regarding the best-interest factor in R.C. 2151.414(D)(1)(e)—whether any of the factors in (E)(7) to (11) apply to the

parents and children—was against the manifest weight of the evidence. Mother contends the trial court incorrectly found abandonment under (10), because the court later acknowledged that a period of no visits was a result of a court order that prohibited visits. Mother points out that, after visitation was restored in July 2017, she was in full compliance with visitation until trial. However, the trial court found that only "a period" of the no visits was a result of the court order prohibiting visits. Mother still does not account for the other periods of abandonment.

{¶ 31} We also note that, although the trial court found, and the evidence supported, that mother complied with many aspects of the case plan and was diligent in pursuing many of the objectives, Ohio courts have recognized:

> [I]t is well-settled that the completion of case plan services alone does not equate to, or necessitate a finding that the parents have substantially remedied the conditions that caused the removal of the child from the home. *In re Mraz*, Brown App. Nos. CA2002-05-011, CA2002-07-014, 2002-Ohio-7278, ¶ 13. A parent can successfully complete the requirements of a case plan, but not substantially remedy the conditions that caused the children to be removed, as the case plan is "simply a means to a goal, but not the goal itself." *In re C.C.*, Cuyahoga App. Nos. 94013, 94014, 2010-Ohio-780, ¶ 25.

*In re E.B.*, 12th Dist. No. CA2009-10-139, 2010-Ohio-1122, ¶ 30; *see also In re J.G.*, 11th Dist. No. 2015-L-102, 2016-Ohio-896, ¶ 74 (finding that although the parents may have satisfied the case plan goals, they have not adequately satisfied those goals so as to be able to provide the child a secure placement); *In re Conn*, 10th Dist. No. 03AP-348, 2003-Ohio-5344, ¶ 19 (finding that substantial completion of case plan requirements does not preclude a grant of permanent custody to a social services agency).

{¶ 32} In the present case, the main issue that prevented mother from successfully challenging the PCC motion was her lack of stable and suitable housing. Despite her generally diligent pursuit of many of the case plan goals, in the end, mother was unable to secure housing for four years that was suitable for her and the children. Without suitable housing, mother is simply unable to properly care for her children. Although this case is difficult due to mother's consistent employment, regular visitation, and other efforts at regaining custody, mother failed to show that she was able to maintain a stable, adequate home for her children. Her inability to obtain stable housing for years, even in the face of

losing custody of her children, speaks strongly to her lack of commitment to care for them. Based on our view of the evidence, we cannot find the trial court's decision regarding the best-interest factors was against the manifest weight of the evidence. For these reasons, mother's assignment of error is overruled.

{¶ 33} Accordingly, mother's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.

*Judgment affirmed.*

LUPER SCHUSTER and BRUNNER, JJ., concur.

_____