[Cite as *In re L.W.*, 2021-Ohio-2461.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

PREBLE COUNTY

|                      |     |                          |
|----------------------|-----|--------------------------|
| IN RE:               | :   |                          |
| L.W.                 | :   | CASE NO. CA2020-12-019   |
|                      | :   | O P I N I O N            |
|                      |     | 7/19/2021                |
|                      | :   |                          |
|                      | :   |                          |
|                      | :   |                          |

APPEAL FROM PREBLE COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 20174094

Jay A. Adams, for appellant.

Sebaly Shillito & Dyer, and Brian A. Muenchenbach, for appellee.

**S. POWELL, J.**

{¶ 1} Appellant ("Father") appeals from the decision of the Preble County Court of Common Pleas, Juvenile Division, designating appellee ("Mother") the residential parent and legal custodian of their daughter, L.W., as well as the juvenile court's decision awarding Father with a "phased-in" standard parenting time order. For the reasons outlined below, we affirm the juvenile court's decision.

**The Parties**

{¶ 2} Mother gave birth to L.W., a girl, on May 31, 2016. There is no dispute that Father, who works remotely as an IT professional, is L.W.'s biological father. There is also no dispute that Mother, who works part-time as a phlebotomist, was unmarried at the time of L.W.'s birth. It is also undisputed that Mother has been L.W.'s primary caregiver since L.W.'s birth and that L.W.'s maternal grandmother takes care of L.W. while Mother is at work.

**Facts and Procedural History**

{¶ 3} On May 23, 2017, approximately one year after L.W.'s birth, Father filed a complaint for parentage wherein he sought custody of L.W. The record indicates that Father filed this motion the same day that Mother filed a motion requesting Father pay child support for L.W.

{¶ 4} On December 8, 2017, the juvenile court appointed L.W. with a guardian ad litem. A pretrial conference was then held on March 20, 2018. Following this pretrial conference, the matter was set for a final hearing on Father's complaint for parentage before a juvenile court magistrate. This hearing was scheduled for June 1, 2018.

{¶ 5} However, due to various reasons, including a medical emergency involving Mother's counsel, the final hearing on Father's motion did not begin until October 11, 2018. During this hearing, which ultimately concluded on May 31, 2019, the magistrate heard testimony from five witnesses. This includes testimony from Father, Mother, and L.W.'s guardian ad litem. The following is a summary of the relevant testimony elicited at the final hearing on Father's motion for parentage.

*Testimony Elicited at the Final Hearing on Father's Complaint for Parentage*

{¶ 6} Father, who testified that he had a strong relationship with L.W., testified that he was concerned for L.W.'s well-being while in Mother's care given the "aggressive"

behavior of Mother's 12-year-old son, L.W.'s half-brother. Father testified that this included L.W.'s half-brother, who Father referred to as a "threat," engaging in "a lot of smacking" and "smacking of the head." Father acknowledged, however, that L.W. did not sustain any injuries as a result of her half-brother's conduct except for a "small knot" that appeared on her head after she was struck by a video game console that her half-brother pulled off a shelf.

{¶ 7} Father also testified that he was concerned for L.W.'s well-being while in Mother's care due to L.W.'s maternal grandfather making "unjust comments." But, when asked about those comments, Father testified and specifically acknowledged that L.W.'s maternal grandfather had actually not done anything that was "verbally * * * inappropriate."

{¶ 8} Continuing, when asked why he believed it was in L.W.'s best interest for him to be designated L.W.'s residential parent and legal custodian rather than Mother, Father summarily testified, "financially, educationally, developmentally," and "safety". Father, who at that time still lived with his parents, also testified that it was in L.W.'s best interest to reside with him because of consistency and "the structure." Explaining what he meant by "the structure," Father testified:

> [S]tructure is, it's a development. * * * A structure provides a
> secure and healthy home. Not just needs and wants but also
> on the disciplinary side of things. If she needs to learn how to
> not do something or learn how to do something there's structure
> that's involved in that.

{¶ 9} Father additionally testified that he would "do everything in [his] power to be present for anything for [L.W.] At any time." This was in addition to Father's testimony that he wanted to spend as much time with L.W. as possible. Father offered this testimony although readily admitting that he had occasionally returned L.W. to Mother a half-hour before his parenting time with L.W. was scheduled to conclude.

{¶ 10} Mother testified that she wanted Father to be active in L.W.'s life, but that she

- 3 -

still had concerns regarding Father's conduct during his parenting time with L.W. This includes concerns regarding Father's lack of help with L.W.'s potty training, as well as the fact that Father does not feed L.W. a full meal during his parenting time and instead gives her sugary snacks and "caffeine to drink."

{¶ 11} Mother also testified that L.W. acts drastically different from her normal behavior after Father exercises his parenting time. This includes L.W. being "very hyper," "screaming," and "jumping on the bed at 11:00 o'clock at night." Despite this, Mother nevertheless testified that she was still "willing to compromise" with Father to "come up with a solution that's best for [L.W.]" Mother testified that she felt that this was necessary for L.W.'s benefit even though Father, who she testified had a "difficult personality," was "constantly" overstepping the boundaries the juvenile court had set via its temporary parenting time order.

{¶ 12} The guardian ad litem testified that Father and Mother are "terrible" at communicating with each other, but that both Father and Mother had generally exhibited appropriate parenting skills while L.W. was in their respective care. The guardian ad litem also testified that Mother and L.W. have a "very strong bond," while Father and L.W. have a "strong bond" that is "getting stronger all the time."

{¶ 13} However, despite this "strong bond" between Father and L.W., the guardian ad litem testified that it was her recommendation that Mother be designated as L.W.'s residential parent and legal custodian, whereas Father be awarded with a "phased in" standard parenting time order for a period of 180 days. Explaining why she believed a "phased in" standard parenting time order was necessary in this case, the guardian ad litem testified:

> [I]t's my opinion that at least right now, [L.W.'s] not completely
> ready for a standard order where she goes for Friday to Sunday
> night. Um because she just has such a short attention span that

she's still kind of learning how to interact with father. Um but I feel like father needs more blocks of time.

{¶ 14} The guardian ad litem additionally testified that a "phased in" standard parenting time order would allow Father to "learn * * * how to be a father," just like L.W. was "learning how to interact" with Father.

{¶ 15} On January 9, 2020, the magistrate issued a detailed, 13-page decision designating Mother as the residential parent and legal custodian of L.W., while Father was awarded with a "phased-in" standard order of parenting time as recommended by the guardian ad litem.[1] As noted above, the magistrate's decision to impose a "phased-in" parenting time order comports with the guardian ad litem's recommendation, as well as the guardian ad litem's testimony that the guardian ad litem was "glad" there had been "delays in this case to give [Father's and L.W.'s] relationship time to grow."[2]

{¶ 16} On January 17, 2020, Father filed an objection to the magistrate's decision. Father then supplemented his objection to the magistrate's decision on August 6, 2020. In his objection, Father alleged that the magistrate's decision did not reflect the evidence presented. Father also argued that the magistrate's decision to designate Mother as L.W.'s residential parent and legal custodian went against L.W.'s best interest.

{¶ 17} On November 23, 2020, the juvenile court issued a decision overruling Father's objection to the magistrate's decision. In so holding, the juvenile court noted that it had "reviewed every pleading and every page of the 200+ pages of transcripts from the two-day trial" and found that it "disagrees" with Father's assertions challenging the

---

1. This "phased-in" order awarded Father with parenting time every Tuesday from 4:00 p.m. to 8:00 p.m. and every Friday from 4:00 p.m. until Saturday at 4:00 p.m. for the first 180 days after the magistrate's decision was filed. Then, after that 180-day period expired, Father was to have the juvenile court's standard parenting time order.

2. We note that, on May 15, 2020, the magistrate later issued a nunc pro tunc decision referring back to its original decision issued on January 9, 2020. The magistrate's nunc pro tunc decision, however, did not change the substance of its decision nor any of the issues pertinent to this appeal.

magistrate's decision. Father now appeals the juvenile court's decision, raising two assignments of error for review.

**Appeal**

{¶ 18} Assignment of Error No. 1:

{¶ 19} THE TRIAL COURT ERRED IN NOT ORDERING DRUG TESTING TIMELY.

{¶ 20} In his first assignment of error, Father argues the juvenile court erred by denying his request to have Mother drug tested immediately after his request was made at the start of the final hearing on Father's complaint held on October 11, 2018, or, if not done immediately, sometime shortly after that hearing concluded.[3] We disagree.

{¶ 21} The juvenile court's decision whether to order a party to submit to drug testing is reviewed for an abuse of discretion. *See Raney v. Raney*, 12th Dist. Warren CA98-07-084, 1999 Ohio App. LEXIS 231, *8 (Feb. 1, 1999); *see also In re Daum*, 3d Dist. Auglaize No. 2-94-28, 1995 Ohio App. LEXIS 1516, *7 (Mar. 31, 1995) (juvenile court did not abuse its discretion by ordering mother be drug tested where "appellant's alcohol problem is conduct contrary to the best interests of her children"). "An abuse of discretion is more than an error of law or judgment, it implies that the attitude of the court is unreasonable, arbitrary, or unconscionable." *In re F.S.*, 12th Dist. Fayette Nos. CA2020-08-011 and CA2020-08-012, 2021-Ohio-345, ¶ 42, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "[T]he vast majority of cases in which an abuse of discretion is asserted involve claims that the decision is unreasonable." *Effective Shareholder Solutions, Inc. v. Natl. City Bank*, 1st Dist. Hamilton Nos. C-080451 and C-090117, 2009-Ohio-6200, ¶ 9. "A decision is unreasonable where it is not supported by a sound reasoning process." *In re L.M.*, 12th

---

3. The record indicates that Father did not file any motion requesting Mother be drug tested in the days leading up to the first day of the final hearing on Father's complaint for parentage held on October 11, 2018. The transcript of the October 11, 2018 hearing, however, indicates that the magistrate presiding over that hearing received a copy of Father's motion.

Dist. Preble Nos. CA2020-12-017 and CA2020-12-018, 2021-Ohio-1630, ¶ 22, citing *Nationwide Agribusiness Ins. Co. v. Heidler*, 12th Dist. Clinton Nos. CA2018-06-003, CA2018-07-004, CA2018-09-012, and CA2018-09-015, 2019-Ohio-4311, ¶ 46.

{¶ 22} Father argues the juvenile court's decision denying his request to have Mother drug tested was improper because there is nothing in the record to indicate his request was made in "bad faith" or that it was a "baseless motion." Father also supports this claim by arguing that there was nothing to prevent the juvenile court from "ordering both parties to test." The juvenile court, however, was not required to order Mother to be drug tested simply because Father made such a request. It is instead well established that "[d]rug testing may be ordered or agreed to when the best interest of a child is at stake." *Raney*, 1999 Ohio App. LEXIS 231, at *7 (trial court did not err by ordering drug testing "due to appropriate concern for the best interest of the infant"). This is because a party's use of drugs may be relevant when determining what is in the best interest of a child. *See Eitutis v. Eitutis*, 11th Dist. Lake No. 2009-L-121, 2011-Ohio-2838, ¶ 107 (trial court did not err by ordering a father to submit to period drug testing where the father's "drug problem may have been detrimental to [the child's] best interest").

{¶ 23} In this case, there is nothing in the record to indicate Mother was using drugs, or even suspected of using drugs, that would necessitate the juvenile court ordering Mother to undergo testing. The same is true as it relates to Father. There was, in fact, no reference to either Mother or Father ever using drugs at the hearing on Father's complaint for parentage. As this court has stated previously, unless agreed to by the parties, the juvenile court need not order either party to submit to the hassle and expense associated with drug testing in a legal custody proceeding when there is no evidence indicating either party is using, or has recently been using, drugs. *See, e.g., In re A.D.B.*, 12th Dist. Butler No. CA2015-10-180, 2016-Ohio-7186, ¶ 16-17 (juvenile court did not err by denying a

grandfather's motion to have a mother drug tested in a legal custody case where "there was not sufficient evidence of current substance abuse on the part of the Mother to justify the expense associated therewith").

{¶ 24} The juvenile court, however, may order a party to undergo drug testing in a legal custody proceeding where the juvenile court has a reasonable suspicion that a party is currently using, or has recently been using, drugs. *See, e.g., Hatfield v. Cornell*, 12th Dist. Fayette No. CA2017-05-011, 2018-Ohio-798, ¶ 17 (juvenile court did not err by ordering a father to undergo hair follicle drug testing in a legal custody case where there was a reasonable suspicion that father may have been using drugs even though the father denied any recent drug use). This is because, as noted above, whether a party is using drugs, or has recently been using drugs, may be relevant to determining what is in the best interest of a child. *See Eitutis*, 2011-Ohio-2838 at ¶ 107. But, even then, whether a party should be ordered to undergo drug testing is left to the sound discretion of the juvenile court.

{¶ 25} In light of the foregoing, because there is nothing in the record to indicate Mother was currently using drugs, or that Mother was even suspected of using drugs in the past, the juvenile court did not err by denying Father's request to have Mother drug tested. In so holding, we note that although the record indicates Father requested the juvenile court to have Mother drug tested, Father never followed up with his request when instructed by the juvenile court that he would need to "get a hearing date from the clerk on that." Father, therefore, effectively abandoned his request to have Mother drug tested by not adhering to the juvenile court's simple instructions to speak with the clerk so that a hearing date on his motion could be established. Therefore, finding no merit to any of the arguments raised by Father herein, Father's first assignment of error lacks merit and is overruled.

{¶ 26} Assignment of Error No. 2:

{¶ 27} THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN THE

DETERMINATION OF CUSTODY AND PARENTING TIME IN THIS CAUSE.

{¶ 28} In his second assignment of error, Father argues the juvenile court erred by designating Mother the residential parent and legal custodian of their daughter, L.W. Father also argues the juvenile court erred by awarding him with a "phased-in" standard order of parenting time. We will address each of Father's claims separately.

*The Juvenile Court Did Not Err by Designating Mother as L.W.'s Residential Parent and Legal Custodian*

{¶ 29} Father initially argues the juvenile court erred by designating Mother as L.W.'s residential parent and legal custodian. We disagree.

{¶ 30} "R.C. 3109.04 governs the award of parental rights and responsibilities." *In re K.R.*, 12th Dist. Clermont No. CA2015-06-049, 2016-Ohio-2775, ¶ 8, citing *Albrecht v. Albrecht*, 12th Dist. Butler Nos. CA2014-12-240 and CA2014-12-245, 2015-Ohio-4916, ¶ 22. The primary concern in making this determination is the best interest of the child. *Bonifield v. Bonifield,* 12th Dist. Butler No. CA2020-02-022, 2021-Ohio-95, ¶ 10; *Rainey v. Rainey*, 12th Dist. Clermont No. CA2010-10-083, 2011-Ohio-4343, ¶ 12. In order to determine the best interest of a child, the juvenile court must consider all relevant factors, including those enumerated in R.C. 3109.04(F)(1). *In re X.B.*, 12th Dist. Butler No. CA2014-07-168, 2015-Ohio-1174, ¶ 19, citing *In re L.E.N.,* 12th Dist. Clinton No. CA2009-03-002, 2009-Ohio-6175, ¶ 11. These factors include, but are not limited to: (1) the wishes of the child's parents regarding the child's care, (2) the wishes and concerns of the child, (3) the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest, (4) the mental and physical health of all persons involved, (5) the child's adjustment to the child's home, school, and community, and (6) the parent more likely to honor and facilitate court-approved parenting time rights. R.C. 3109.04(F)(1)(a) thru (f).

{¶ 31} The juvenile court enjoys broad discretion in custody proceedings. *In re E.L.C.*, 12th Dist. Butler No. CA2014-09-177, 2015-Ohio-2220, ¶ 16. That includes the case at bar. To that end, "[t]he standard of review in custody decisions is whether the juvenile court abused its discretion." *In re J.W.*, 12th Dist. Butler No. CA2019-07-108, 2020-Ohio-322, ¶ 23, citing *C.D. v. D.L.*, 12th Dist. Fayette No. CA2006-09-037, 2007-Ohio-2559, ¶ 14. In custody matters, the juvenile court's discretion "should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re A.B.*, 12th Dist. Brown No. CA2016-11-021, 2017-Ohio-5776, ¶ 12, citing *In re C.A.*, 12th Dist. Butler No. CA2014-07-165, 2015-Ohio-1410, ¶ 13. Such a deferential review in child custody proceedings is warranted "because much may be evident in the parties' demeanor and attitude that does not translate well to the record." *In re L.C.*, 12th Dist. Warren No. CA2019-08-086, 2020-Ohio-4629, ¶ 16, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 419 (1997).

{¶ 32} Father, as part of his appellate brief, does not dispute that the juvenile court "took the facts into consideration," nor does Father dispute in his appellate brief that the juvenile court conducted an "analysis of the facts." Father also does not dispute most, if not all, of the juvenile court's factual findings. Father instead disputes the manner in which the juvenile court applied those facts to the law by claiming the juvenile court failed to "properly consider" those facts in relation to the best interest factors set forth in 3109.04(F)(1) set forth above. To support this claim, Father goes to great lengths to explain which of the best interest factors is "not a factor," a "non-factor," or a "neutral factor," as opposed to which of the best interest factors "cuts against mother" or "clearly cuts in [his] favor."

{¶ 33} Father's argument, however, is nothing more than a challenge to the weight the juvenile court gave to each of the best interest factors set forth in R.C. 3109.04(F)(1).

This court will not second-guess a lower court's decision in regard to the appropriate weight to be given to the best interest factors. *Bonifield*, 2021-Ohio-95 at ¶ 13, citing *In re A.B.*, 12th Dist. Butler No. CA2009-10-257, 2010-Ohio-2823, ¶ 35 ("the trial court's custody decision is supported by the record, and we decline to second guess the trial court in this matter"). This is because, as noted by this court previously, it is not this court's role to determine the relative weight to assign to each of those factors when determining what is in a child's best interest. *Mack v. Mack*, 12th Dist. Butler No. CA2018-09-179, 2019-Ohio-2379, ¶ 33 (noting that it is not this court's role to determine the relative weight to assign to each factor, in relation to the others, when determining the child's best interest). That decision is instead left up to the lower court, which, in this case, was the juvenile court. *See Bonifield* at ¶ 12 ("it is the role of the domestic relations court, not this court, to determine the relative weight to assign to each factor when determining the child's best interest"); *see also Ruble v. Ruble*, 12th Dist. Madison No. CA2010-09-019, 2011-Ohio-3350, ¶ 18 ("it was the role of the trial court to determine the relative weight to assign each factor, in relation to the others, when determining the children's best interest").

{¶ 34} However, even if we were to accept Father's argument, we find the juvenile court's decision to designate Mother as L.W.'s residential parent and legal custodian was not an abuse of its discretion. This is because the juvenile court's decision finding it was in L.W.'s best interest to designate Mother as her residential parent and legal custodian was not unreasonable, arbitrary, or unconscionable. The juvenile court's decision was also supported by competent and credible evidence. This includes evidence indicating Father does not feed L.W. a full meal during his parenting time and instead gives her sugary snacks and caffeinated drinks. This also includes evidence indicating L.W. acts drastically different from her normal behavior after Father exercises his parenting time. And, as stated above, the juvenile court's decision was consistent with the guardian ad litem's recommendation.

- 11 -

Therefore, finding no error in the juvenile court's decision designating Mother residential parent and legal custodian of L.W. rather than Father, Father's first argument lacks merit.

*Juvenile Court Did Not Err by Awarding Father with a "Phased-In" Standard Order of Parenting Time*

{¶ 35} Father also argues the juvenile court erred by awarding him with a "phased-in" standard order of parenting time. Father's entire argument advanced in support of this position, however, is that it is "apparent" the juvenile court abused its discretion because he "should be entitled to just as much time as mother and certainly far greater amount of time than was ordered under this slow phased-in parenting time schedule." This type of argument is a clear violation of App.R. 16(A)(7), an argument that this court may disregard in accordance with App.R. 12(A)(2). *See, e.g., In re L.C.*, 12th Dist. Warren No. CA2019-08-086, 2020-Ohio-4629, ¶ 12 (citing to App.R. 12[A][2] when noting "this court is entitled to disregard Father's assigned error due to his noncompliance with App.R. 16[A][7]"); and *In re C.S.,* 12th Dist. Butler Nos. CA2005-06-152 and CA2005-06-153, 2006-Ohio-5198, ¶ 20-21 (citing App.R. 12[A][2] when declining to address appellant's second assignment of error "due to appellant's failure to brief the assigned error" as required by App.R. 16[A][7]).

{¶ 36} But, even when ignoring this violation of the appellate rules, the juvenile court did not abuse its discretion by awarding Father with the amount of parenting time that it did. The juvenile court's decision to award Father with a "phased-in" order of parenting time, which was in conformance with the guardian ad litem's recommendation, was to allow Father to build his relationship with L.W. over time so as to not force L.W. into a situation that could, but not necessarily would, impact L.W.'s safety and comfort given her young age and level of development. Although Father believes the juvenile court should not have included this "phase-in" period, it is the child's best interest and not the parent's wishes that is controlling. *See Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, ¶ 44 ("a parent's

wishes should [not] be placed before a child's best interest").  This is particularly true here when considering Father himself testified that he had not exercised unsupervised parenting time with L.W. for any significant period of time.  Therefore, because we find no error in the juvenile court's decision awarding Father with a "phased-in" standard parenting time order, Father's second argument challenging the juvenile court's award of parenting time also lacks merit.  Father's second assignment of error is overruled.

**Conclusion**

{¶ 37} For the reasons outlined above, and because we find no merit to any of the arguments raised by Father within either his first or second assignments of error, Father's two assignments of error lack merit and are overruled.

{¶ 38} Judgment affirmed.

PIPER, P.J., and HENDRICKSON, J., concur.