[Cite as *In re P.C.*, 2022-Ohio-2720.]

**IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
LOGAN COUNTY**

IN RE:

     P.C.,

ADJUDICATED DEPENDENT CHILD.

[DANIEL C. - APPELLANT]

CASE NO.  8-21-39

O P I N I O N

IN RE:

     A.C.,

ADJUDICATED DEPENDENT CHILD.

[DANIEL C. - APPELLANT]

CASE NO.  8-21-40

O P I N I O N

IN RE:

     C.C.,

ADJUDICATED DEPENDENT CHILD.

[DANIEL C. - APPELLANT]

CASE NO.  8-21-41

O P I N I O N

**Appeals from Logan County Common Pleas Court
Family Court Division
Trial Court Nos.  18 CS 0037 B, 18 CS 0037 C and 18 CS 0037 D**

**Judgments Affirmed**

**Date of Decision:  August 8, 2022**

Case No. 8-21-39, 8-21-40, 8-21-41

**APPEARANCES:**

*Alison Boggs* **for Appellant**

*Stacia L. Rapp* **for Appellee**

*Linda MacGillivray,* **Guardian Ad Litem**

**ZIMMERMAN, P.J.**

**{¶1}** Appellant, Daniel C. ("Daniel"), appeals the November 2, 2021 decisions of the Logan County Court of Common Pleas, Family Court Division, granting legal custody of his minor children, P.C., A.C., and C.C., to Noah C. ("Noah") and Mary C. ("Mary"), the children's paternal grandfather and step-grandmother. For the reasons that follow, we affirm.

**{¶2}** P.C., born in 2007, and A.C., born in 2010, are the children of Daniel and Danielle F. ("Danielle"), and C.C., born in 2013, is the minor child of Daniel and Amy C. ("Amy"). This case commenced after Logan County Job and Family Services (the "agency") filed complaints on August 6, 2018 alleging P.C., A.C., and C.C. to be dependent children.[1]

---

[1] Much of the factual and procedural background of the cases is recited in previous appeals, and we will not duplicate those efforts here. *See In re P.C.*, 3d Dist. Logan No. 8-20-39, 2021-Ohio-1238; *In re P.C.*, 3d Dist. Logan No. 8-19-45, 2020-Ohio-2889.

{¶3} The facts relevant to the resolution of this appeal are as follows. Daniel filed motions requesting that the trial court grant him legal custody of P.C., A.C., and C.C. on November 22, 2019. On January 23, 2020, the agency filed motions for custody under R.C. 2151.353 and 2151.42, requesting that the trial court grant legal custody of P.C., A.C., and C.C. to Noah and Mary.[23]

{¶4} After the trial court adjudicated P.C., A.C., and C.C. dependent children on August 20, 2020, and this court affirmed the decisions of the trial court on April 12, 2021, the trial court proceeded to a custody hearing on August 16-17, 2021. On November 2, 2021, the trial court granted the agency's motions requesting that it grant legal custody of P.C., A.C., and C.C. to Noah and Mary. (Doc. No. 431).

{¶5} Daniel filed his notices of appeal on November 22, 2021. He raises four assignments of error for our review. For ease of our discussion, we will review Daniel's first and third assignments of error together, followed by his second assignment of error, then his fourth assignment of error.

**Assignment of Error No. I**

**The Trial Court's Decision is Against the Manifest Weight and Sufficiency of the Evidence.**

---

[2] Noah and Mary filed a statement of understanding on August 16, 2021.

[3] Even though Amy filed a motion requesting that the trial court grant her legal custody of C.C. on October 7, 2019, she withdrew her motion prior to the custody hearing and consented to the agency's motion requesting the trial court award legal custody of C.C. to Noah and Mary. Danielle also consented to the agency's motion requesting that the trial court award legal custody of P.C. and A.C. to Noah and Mary.

**Assignment of Error No. III**

**The Guardian Ad Litem Failed to Perform Necessary Duties Pursuant to Ohio Revised Code Section 2151.28 and Superindent [sic] Rule 48, When She Failed to Interview Appellant at Any Time During the Entire Case.**

{¶6} In his first and third assignments of error, Daniel argues that the trial court abused its discretion by awarding legal custody of P.C., A.C., and C.C. to Noah and Mary. In particular, in his first assignment of error, Daniel contends that the trial court's dispositional determinations are not supported by a preponderance of the evidence and are against the manifest weight of the evidence. In his third assignment of error, Daniel specifically argues that the trial court improperly weighed the guardian ad litem's ("GAL") recommendations.

*Standard of Review*

{¶7} "The trial court's decision to grant or deny a motion for legal custody is within its sound discretion and will not be reversed absent an abuse of discretion." *In re J.B.*, 3d Dist. Allen No. 1-15-79, 2016-Ohio-2670, ¶ 35. An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Analysis*

{¶8} Following the adjudication of a child alleged to be abused, neglected, or dependent, R.C. 2151.353(A) provides the juvenile court's dispositional options for the child. "Among the trial court's dispositional options is granting legal

custody of the minor child to [a parent] or a person identified in the complaint or in a motion filed prior to the dispositional hearing." *In re J.R.*, 3d Dist. Allen No. 1-14-22, 2015-Ohio-643, ¶ 17. *See also* R.C. 2151.353(A)(3).

{¶9} Because a legal-custody award "does not divest parents of their residual parental rights, privileges, and responsibilities," it "is 'not as drastic a remedy as permanent custody.'" *In re J.B.* at ¶ 32, quoting *In re L.D.*, 10th Dist. Franklin No. 12AP-985, 2013-Ohio-3214, ¶ 7. "In such a case, a parent's right to regain custody is not permanently foreclosed." *In re B.P.*, 3d Dist. Logan No. 8-15-07, 2015-Ohio-5445, ¶ 19. *See also In re J.B.* at ¶ 32 ("Since the granting of legal custody does not divest a parent of his or her fundamental parental rights, the parent can generally petition the court for a custody modification in the future.").

{¶10} "For this reason, unlike in a permanent custody proceeding where a juvenile court's standard of review is by clear and convincing evidence, the standard the trial court uses in making its determination in a legal custody proceeding is the less restrictive "'preponderance of the evidence.'" *In re B.P.* at ¶ 19, quoting *In re M.J.M.*, 8th Dist. Cuyahoga No. 94130, 2010-Ohio-1674, ¶ 9. "'Preponderance of the evidence' means evidence that is more probable, more persuasive, or of greater probative value." *In re J.B.* at ¶ 33, quoting *In re C.V.M.*, 8th Dist. Cuyahoga No. 98340, 2012-Ohio-5514, ¶ 7. "In a dispositional hearing involving legal custody,

the focus is on the best interest of the child." *Id.*, citing *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, ¶ 10.

{¶11} When "considering a disposition of legal custody, R.C. 2151.353(A)(3) does not list specific factors a court should consider in deciding what is in the child's best interest." *Id.* at ¶ 34. *See also* R.C. 2151.42(A). "While not required, to determine the best interest of a child for purposes of R.C. 2151.353(A)(3), trial courts may be guided by the factors listed in R.C. 3109.04(F)(1) or 2151.414(D)." *In re M.H.*, 3d Dist. Seneca No. 13-13-45, 2014-Ohio-1485, ¶ 13.

{¶12} The R.C. 2151.414(D) "factors include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, the child's need for permanence, and whether any of the factors in R.C. 2151.414(E)(7)-(11) are applicable." *In re B.D.*, 9th Dist. Summit No. 30194, 2022-Ohio-1832, ¶ 15, citing R.C. 2151.414(D)(1)(a)-(e) and *In re B.C.*, 9th Dist. Summit Nos. 26976 and 26977, 2014-Ohio-2748, ¶ 16. Furthermore, "[w]hile some [of the R.C. 3109.04(F)(1)] factors overlap with those above, others include the child's adjustment to his or her environment; the mental and physical health of all persons involved; the parents' history of providing support and honoring companionship orders; certain indicia of violence, abuse, or neglect in any household involved; and

whether a parent plans to or has established a residence outside of Ohio." *Id.*, citing R.C. 3109.04(F)(1).

{¶13} In this case, Daniel argues that the trial court's conclusion that it was in P.C.'s, A.C.'s, and C.C.'s best interest to grant the agency's motion requesting that it award legal custody of the children to Noah and Mary is based on insufficient evidence and is against the manifest weight of the evidence. We disagree.

{¶14} First, based on our review of the record, we conclude that the agency presented a preponderance of evidence that it was in P.C.'s, A.C.'s, and C.C.'s best interest that the trial court award legal custody of them to Noah and Mary. Specifically, the trial court considered the best-interest factors provided under R.C. 2151.414(D) and 3109.04(F)(1).

{¶15} Regarding R.C. 3109.04(F)(1)(a), the trial court considered the wishes of the children's parents regarding their care and found that "both Mothers of the minor children desire for the children to be placed in the legal custody of Mary and Noah" even though Daniel "wishes to regain custody of" the children. (Doc. No. 432).

{¶16} Similarly, as to R.C. 2151.414(D)(1)(b) and 3109.04(F)(1)(b)—the children's wishes—the trial court found that (during a June 14, 2019 in camera interview with the trial court) P.C. and A.C. expressed a desire to stay with Noah and Mary. Furthermore, the trial court found that P.C., A.C., and C.C. expressed a

desire (during separate interviews with the GAL) for the trial court to grant legal custody to Noah and Mary. The GAL also recommended that the trial court grant the agency's motions requesting that it award legal custody of the children to Noah and Mary.

{¶17} However, Daniel contends that the trial court improperly weighed the GAL's recommendation that the trial court grant the agency's motions requesting that it award legal custody of the children to Noah and Mary. Yet, the GAL's recommendation is only one factor for the trial court to weigh along with the other factors outlined in R.C. 2151.414(D) and 3109.04(F)(1). *See In re K.M.*, 3d Dist. Crawford No. 3-18-11, 2018-Ohio-3711, ¶ 27. Indeed, """"a trial court is not bound to follow a [GAL's] recommendation."""" *Merriman v. Merriman*, 3d Dist. Paulding No. 11-15-10, 2016-Ohio-3385, ¶ 19, quoting *Bomberger-Cronin v. Cronin*, 2d Dist. Greene, No. 2014-CA-4, 2014-Ohio-2302, ¶ 27, quoting *Lumley v. Lumley*, 10th Dist. Franklin No. 09AP-556, 2009-Ohio-6992, ¶ 46. Stated another way, whether the GAL interviewed Daniel or investigated his concerns regarding Noah and Mary prior to issuing her reports to the trial court is a matter of credibility for the trial court to assess when considering its best-interest analysis. *See Merriman* at ¶ 19 (""""As the fact finder, the trial court determines the [GAL's] credibility and the weight to be given to the [GAL's] recommendation.""""), quoting *Bomberger-Cronin* at ¶ 27, quoting *Lumley* at ¶ 46. Consequently, because the """"assessment

of the credibility and weight of the evidence is reserved for the trial court, we will not second guess the court's"'"'" decision to accept or reject the GAL's recommendation. *Id.*, quoting *Bomberger-Cronin* at ¶ 27, quoting *Lumley* at ¶ 46.

{¶18} Concerning R.C. 3109.04(F)(1)(c) and 2151.414(D)(1)(a)—the children's relationship with their parents, siblings, relatives, and other caregivers—the trial court found that the children "are bonded" and that their relationship with Noah and Mary "is very positive." (Doc. No. 432). Nevertheless, the trial court further analyzed that "[t]he children's interaction and interrelationship with [Daniel] is strained for the children and [Daniel]" because Daniel "has not seen the children since August of 2019, roughly two (2) years ago" as of the date of the dispositional hearing. (Doc. No. 432). *Compare In re B.D.*, 2022-Ohio-1832, at ¶ 26 (finding that "the children had had no contact with Mother for a significant period of time as of the date of the hearing"). Importantly, when weighing the evidence under R.C. 2151.414(D)(1)(a), "[c]ourts have considered the consistency of a party's visitation with a child * * * ." *In re K.R.*, 10th Dist. Franklin No. 18AP-633, 2019-Ohio-2192, ¶ 82, citing *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, ¶ 59 and *In re S.C.*, 9th Dist. Lorain No. 04CA008469, 2004-Ohio-4570, ¶ 36. Consequently, the court weighed these factors in favor of granting the agency's motion requesting that it award legal custody of the children to Noah and Mary.

**{¶19}** As to R.C. 3109.04(F)(1)(d) and (e)—the children's adjustment to home, school, and community and the mental and physical health of all persons involved in the situation—there is a preponderance of the evidence in the record supporting the trial court's findings that Noah and Mary "provide the children with stability and structure" and "provide for the minor children's mental and physical well-being." (Doc. No. 432). *Accord In re B.D.* at ¶ 28. Specifically, the record reflects that the children are well adjusted to their home, school, and community.

**{¶20}** Prior to their removal, the record reflects that the children were chronically absent from school, infested with lice and bed-bug bites, exhibited poor behavior, and suffered other untreated-medical issues. However, the record reflects that the children's mental and physical health improved following their removal. In particular, Lee Ann Claypool ("Claypool"), A.C. and C.C.'s elementary school principal, testified that A.C. and C.C. made significant progress with their reading and math aptitude following their removal. Moreover, the GAL testified that the children have adjusted to living in Noah and Mary's home and are thriving in their care. Likewise, Mary testified that prior to their removal, the children "were pretty mean to one another," but they do not "have that issue now." (Aug. 16, 2021 Tr., Vol. I, at 91). Mary further testified to the children's improved school attendance and grades and testified that the children obtained the necessary medical care that they had been lacking.

{¶21} Furthermore, Krista Bray ("Bray"), the children's mental-health therapist, testified that P.C. was diagnosed with ADHD and PTSD because of "food insecurities" and because, according to P.C., Daniel "had hit her." (Aug. 16, 2021 Tr., Vol. I, at 54). Similarly, Bray testified that C.C. was diagnosed with PTSD. Bray testified that P.C. expressed "a lot of anxiety about returning to [Daniel's] custody" because "[s]he is scared of [him]." (*Id.* at 55). She testified that P.C. "has made some progress," is "able to verbalize her feelings a lot better now," "not reporting as many nightmares [or] flashbacks," and "talks to Mary a lot * * * ." (*Id.* at 59). Likewise, Bray testified that C.C. "has made a lot of progress" since he is "very happy" without "a lot of anger" and that he is "[n]ot destroying property anymore," "not a lot of lying," [a]nd following rules better." (*Id.* at 65). Importantly, Bray testified that P.C. and C.C.'s "environment" contributed the most to their progress. (*Id.* at 59, 65). Bray testified that she began treating A.C. but that she transferred her care to another therapist due to confidentiality issues between P.C.'s and A.C.'s treatment. Nevertheless, she testified that A.C. exhibited "sexualized behaviors" following her removal, but that A.C. was working with Bray on improving her general behavior. (*Id.* at 56).

{¶22} Nonetheless, even though the record reflects that Noah and Mary are able and willing to provide a safe and stable home for the children, the record reflects by a preponderance of the evidence that Daniel cannot. Indeed, the record

reflects that Daniel is living in metropolitan housing with his mother (who is "on probation * * * for treatment in lieu of conviction for Trafficking Cocaine") but the record reflects that the children would not be able to live in that home. (*Id.* at 202). Likewise, neither the agency nor the GAL were able to observe Daniel's home since Daniel refused to communicate with them. *See In re B.D.* at ¶ 23 (noting that "Mother moved multiple times during the case, always refusing to allow the caseworker or guardian ad litem access to her various homes").

{¶23} Similarly, as to R.C. 2151.414(D)(1)(d)—the children's need for a legally secure permanent placement—the trial court found that "[t]he children are in need of permanency and the most secure placement for the minor children is remaining with Mary and Noah * * * ." (Doc. No. 432). Indeed, at the time of the hearing, this case had been pending for three years. *See In re A.D.*, 9th Dist. Summit No. 29976, 2022-Ohio-777, ¶ 28. Furthermore, "'[a] legally secure permanent placement is more than a house with four walls. Rather, it generally encompasses a stable environment where a child will live in safety with one or more dependable adults who will provide for the child's needs.'" *In re K.M.*, 2018-Ohio-3711, at ¶ 29, quoting *In re M.B.*, 4th Dist. Highland No. 15CA19, 2016-Ohio-793, ¶ 56.

{¶24} Here, Daniel alleges that the evidence that he "completed the case plan, [but] he did not see any benefit to his hard work" weighs against granting the agency's motion requesting that it award legal custody of the children to Noah and

Mary. (Appellant's Brief at 7). However, it is generally accepted that a trial court is not limited to considering only compliance with case plan objectives in its analysis of a child's need for a legally secure permanent placement. *See, e.g.*, *In re T.A.*, 10th Dist. Franklin No. 18AP-943, 2020-Ohio-815, ¶ 29. Thus, even though the record reflects that Daniel substantially complied with the case-plan requirements early in the case, Cynthia Smith ("Smith"), Logan County Children Services' caseworker, testified that Daniel ceased communicating with the agency in January 2020. *See In re C.T.*, 2d Dist. Montgomery No. 29208, 2021-Ohio-4023, ¶ 72.

{¶25} Regarding R.C. 3109.04(F)(1)(f), the trial court found that "Noah and Mary are likely to honor and facilitate Court approved parenting time rights or visitation and companionship rights with the minor children and their parents" because "[t]hey have honored the court orders before and have never had any issues."[4] (Doc. No. 432).

{¶26} Finally, with respect to R.C. 2151.414(D)(1)(e)—whether any of the factors in R.C. 2151.414(E)(7)-(11) apply—the trial court did not specifically find that any of the factors applicable to the facts of this case. Nevertheless, the trial court noted that Daniel "has not seen or spoken to the minor children in two (2) years" as of the date of the dispositional hearing and that "[h]e tested positive for

---

[4] The trial court found that there is no evidence that R.C. 3109.04(F)(1)(g), (h), (i), or (j) apply to the facts of this case.

-13-

alcohol on the morning of the hearing when the case plan specifically says he will refrain from using alcohol." (Doc. No. 432). *See* R.C. 2151.414(E)(9), (10).

**{¶27}** Therefore, based on our review of the record, we conclude that the record supports the trial court's best-interest findings. *Accord In re K.B.*, 3d Dist. Hancock No. 5-20-37, 2021-Ohio-3273, ¶ 46. Consequently, the trial court's decision granting the agency's motion requesting that it award legal custody of the children to Noah and Mary is supported by a preponderance of the evidence.

**{¶28}** Nevertheless, Daniel maintains that the trial court's decision designating Noah and Mary as the children's legal custodians is against the manifest weight of the evidence. "[A] manifest weight challenge concerns '"the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other."'" (Emphasis sic.) *In re K.B.* at ¶ 24, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "In a manifest weight challenge 'a reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.'" *Id.*, quoting *In re C.A.*, 12th Dist. Butler No. CA2014-07-165, 2015-Ohio-1410, ¶ 16. "'[E]very reasonable presumption must be made in favor of the judgment and the finding of facts.'" *Id.*,

quoting *Eastley* at ¶ 21. "'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment * * * .'" *Id.*, quoting *Eastley* at ¶ 21.

**{¶29}** Here, Daniel contends that the trial court's dispositional placements of P.C., A.C., and C.C. are against the manifest weight of the evidence because the trial court incorrectly believed the agency's witnesses over his witnesses' testimony. Specifically, Daniel contends that the trial court should have weighed more heavily Annette Deao's, the trial court's substance-abuse counselor, testimony that Daniel "did not have a substance abuse problem." (Appellant's Brief at 7). Similarly, Daniel contends that the trial court should have more critically weighed the GAL's credibility "when she never offered * * * to engage in a real dialogue with him about the change in attitude by his children" from the time that they were removed and placed with Mary and Noah. (*Id.* at 9). Furthermore, Daniel contends that the trial court inappropriately weighed Smith's credibility "instead of seeing the unreasonableness of the attitude toward [him]" "even when he completed all the objectives" of the case plan. (*Id.* at 13).

**{¶30}** However, the trial court in this case issued 35-page decisions, which provide synopses of the relevant testimony of the agency's seven witnesses and Daniel's six witnesses in addition to the factual and procedural history of the cases. *Accord In re M.H.*, 2014-Ohio-1485, at ¶ 16. Relevant to Daniel's witnesses'

testimony, the trial court found Terry Grubb's "credibility was lacking due to the conflicts in his testimony" and that Daniel's mother, Donna Whetsel, was recently convicted of trafficking in cocaine. (Doc. No. 432). Likewise, the trial court recounted the remainder of Daniel's witnesses' testimony but ultimately concluded that testimony did not outweigh the testimony provided by the agency. *Compare In re C.B.*, 9th Dist. Summit No. 30150, 2022-Ohio-1929, ¶ 24-25 (noting that mother alleged "that there was ongoing alcohol abuse and domestic violence in Grandmother's home" but that mother's allegations were belied by the evidence presented at the dispositional hearing). As with all arguments involving credibility determinations lodged on appeal, it is not the duty of this court to insert itself in second-guessing the trial court's credibility assessments. *Accord In re D.R.*, 12th Dist. Butler No. CA2005-06-150, 2006-Ohio-340, ¶ 12.

{¶31} Importantly, while Daniel's efforts are commendable, the record reflects that the children are thriving in Noah and Mary's care and that Daniel is unable to provide a safe and stable home for the children. Thus, "it is clear that * * * the trial court appropriately weighed the evidence presented both in favor of and against [Daniel]." *In re M.H.* at ¶ 20. Consequently, based on our thorough review of the record before us, we conclude that there is competent, credible evidence supporting the trial court's decision granting the agency's motions requesting that it award legal custody of P.C., A.C., and C.C. to Noah and Mary. *Id.* ("Because the

record contains competent, credible evidence supporting the trial court's disposition of M.H., we cannot find that its disposition of M.H. was against the manifest weight of the evidence."), citing *In re C.W.*, 3d Dist. Wyandot No. 16-09-26, 2010-Ohio-2157, ¶ 11. Therefore, we cannot conclude that the trial court's disposition of P.C., A.C., and C.C. is against the manifest weight of the evidence.

{¶32} In sum, because "[c]hild custody determinations are some of the most difficult and agonizing decisions a trial court must make," appellate courts must provide trial courts with wide latitude in its consideration of the evidence. *In re A.C.*, 3d Dist. Allen No. 1-19-20, 2020-Ohio-980, ¶ 88, citing *Carr v. Kaiser*, 3d Dist. Defiance No. 4-11-11, 2012-Ohio-2688, ¶ 25, citing *Davis v. Flickinger*, 77 Ohio St.3d 415 (1997), paragraph two of the syllabus. Accordingly, based on the evidence presented in these cases, we conclude that the trial court did not abuse its discretion by granting the agency's motions requesting that it award legal custody of P.C., A.C., and C.C. to Noah and Mary. Importantly, because Daniel maintains residual rights, he "may 'petition the court for a modification of custody' in the future." *Id.*, quoting *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, ¶ 17, citing *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, ¶ 36.

{¶33} For these reasons, Daniel's first and third assignments of error are overruled.

**Assignment of Error No. II**

**The Trial Court Erred When it Did Not Require the Paternal Grandparents to Submit to the Random Drug Test Prior to the Hearing.**

{¶34} In his second assignment of error, Daniel argues that the trial court erred by failing to order Noah and Mary to submit to drug screens prior to the dispositional hearing.

*Standard of Review*

{¶35} A trial court's decision "whether to order a party to submit to drug testing is reviewed for an abuse of discretion." *In re L.W.*, 12th Dist. Preble No. CA2020-12-019, 2021-Ohio-2461, ¶ 21, citing *Raney v. Raney*, 12th Dist. Warren CA98-07-084, 1999 WL 58162, *3 (Feb. 1, 1999) and *In re Daum*, 3d Dist. Auglaize No. 2-94-28, 1995 WL 141508, *2 (Mar. 31, 1995). As we previously stated, an abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

*Analysis*

{¶36} In cases involving the care and custody of children, Ohio's courts of appeal have determined that "'[d]rug testing may be ordered or agreed to when the best interest of a child is at stake.'" *Hatfield v. Cornell*, 12th Dist. No. CA2017-05-011, 2018-Ohio-798, ¶ 17, quoting *Raney* at *3. Here, Daniel contends that the trial court abused its discretion by failing to order Noah and Mary to submit to a drug

screen even though they "were being considered for legal custody of the minor children" and "[t]he issue of [their] prior drug use was raised in multiple hearings prior to the start of the hearing for legal custody." (Appellant's Brief at 15).

**{¶37}** Importantly, Daniel did not object to the trial court's failure to order Noah and Mary to submit to a drug screen prior to the dispositional hearing. *Accord Raney* at *3. "A party's failure to object forfeits review for all but plain error, which appellate courts will invoke when the error is of such seriousness that it affects 'the basic fairness, integrity, or public reputation of the judicial process.'" *In re I.W.*, 1st Dist. Hamilton No. C-180095, 2019-Ohio-1515, ¶ 14, quoting *McNeil v. Kingsley*, 178 Ohio App.3d 674, 2008-Ohio-5536, ¶ 24 (3d Dist.). "However, invocation of the plain-error doctrine in civil cases is rare and is only employed by the court in instances in which 'the error complained of "would have a material adverse [e]ffect on the character and public confidence in judicial proceedings."'" *Id.*, quoting *Reichert v. Ingersoll*, 18 Ohio St.3d 220, 223 (1985), quoting *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 209 (1982). Indeed, the "use of this doctrine 'is to be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *In re C.N.*, 2d Dist. Montgomery No. 27119, 2016-Ohio-7322, ¶ 55, quoting *Reichert* at 223.

**{¶38}** This case does not present exceptional circumstances that would require reversal to prevent a manifest miscarriage of justice. That is, there is no

evidence in the record that the trial court had any reason to believe that Noah or Mary were currently using, or had recently been using, drugs, prior to the dispositional hearing. *See In re L.W.*, 2021-Ohio-2461, at ¶ 24 (noting that a juvenile court "may order a party to undergo drug testing in a legal custody proceeding where the juvenile court has a reasonable suspicion that a party is currently using, or has recently been using, drugs"). Furthermore, to the extent that Daniel presented testimony *at* the dispositional hearing alleging drug use by Noah and Mary, the trial court did not find that testimony to be credible, which was its prerogative to do. *See Hatfield* at ¶ 17. Consequently, it was not error, let alone plain error, for the trial court not to order Noah and Mary to submit to a drug screen.

{¶39} Daniel's second assignment of error is overruled.

**Assignment of Error No. IV**

**Appellant Received Ineffective Assistance of Counsel.**

{¶40} In his fourth assignment of error, Daniel argues that his trial counsel was ineffective. Specifically, Daniel asserts that his trial counsel was ineffective for failing to "introduce crucial evidence that would have put the credibility of every witness in question." (Appellant's Brief at 20).

*Standard of Review*

{¶41} "'In permanent custody proceedings, where parents face losing their children, we apply the same test as the test for ineffective assistance of counsel in

-20-

criminal cases.'" *In re V.G.*, 3d Dist. Logan No. 8-20-57, 2021-Ohio-3554, ¶ 62, quoting *In re E.C.*, 3d Dist. Hancock No. 5-15-01, 2015-Ohio-2211, ¶ 40. Therefore, a petitioner asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the petitioner. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). *See also In re V.G.* at ¶ 62. In order to show counsel's conduct was deficient or unreasonable, the petitioner must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 687.

**{¶42}** "Prejudice results when '"there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."'" *In re V.G.* at ¶ 63, quoting *Bradley* at 142, quoting *Strickland* at 694. "'"A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Bradley* at 142, quoting *Strickland* at 694.

*Analysis*

**{¶43}** Here, Daniel argues that his trial counsel was ineffective for failing "to present the recordings [he] made * * * of his time with his time with his children." (Appellant's Brief at 21). Daniel specifically alleges that the recordings would have

revealed "how he acted with his children and how the children acted with him"; "how jaded and wrong the agency's representations were about what took place during [his] parenting time"; and "call[ed] into question Mary Castle's credibility * * *." (*Id.*).

{¶44} However, Daniel cannot demonstrate that he was prejudiced by his trial counsel's failure to present those recordings at the August 16-17, 2021 dispositional hearing. Importantly, the record reveals that the recordings were admitted into the record at a prior stage of the case. (*See* Aug. 22, 2019 Tr. at 69). Likewise, Daniel testified at the dispositional hearing that the recordings were admitted into record at a prior stage of the case and invited the trial court to review them as part of his case. (*See* Aug. 17, 2021 Tr., Vol. II, at 339-340). In other words, because those recordings were already before the trial court, Daniel cannot demonstrate that the recordings would have changed the outcome of the trial court's dispositional designations. Therefore, we cannot conclude that Daniel's trial counsel was ineffective for failing to present the recordings depicting his parenting time with his children.

{¶45} Accordingly, Daniel's fourth assignment of error is overruled.

{¶46} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgments of the trial court.

***Judgments Affirmed***

**SHAW and WILLAMOWSKI, J.J., concur.**

**/jlr**